# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIMBERLY DAWN POLLY )
) No. 17-968
)
    v.

COMMISSIONER OF SOCIAL
SECURITY


## OPINION AND ORDER


## SYNOPSIS

Plaintiff filed an application for social security disability benefits and supplemental social security income. She alleged disability due to mental and physical impairments, such as bipolar disorder, migraines, and fibromyalgia. Her application was denied initially, and upon hearing by an administrative law judge ("ALJ"). The Appeals Council denied her request for review. Before the Court are the parties' Cross-Motions for Summary Judgment. For the following reasons, Plaintiff's Motion will be granted, and Defendant's denied, and this matter remanded for further proceedings.


## OPINION

### I.    STANDARD OF REVIEW

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3) 7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the

1

district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, No. No. 10-6540, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted). Nonetheless, I am not required to read the ALJ's opinion "in a vacuum." Knox v. Astrue, No. No. 9-1075, 2010 U.S. Dist. LEXIS 28978, at *22 (W.D. Pa. May 26, 2010).

## II.    THE PARTIES' MOTIONS

Plaintiff contends, primarily, that the ALJ erred in his treatment of the opinion of primary care physician Umesh Golani; in rejecting the social functioning limitations opined to by two consulting examiners; and in assessing her credibility.

I first address the ALJ's conclusions regarding Plaintiff's headaches. In terms of migraines, "while courts generally afford significant deference to an ALJ's credibility determination, an ALJ must be particularly diligent in making such determinations regarding migraine headaches because laboratory tests cannot prove their existence…Brain scans and physical examinations cannot detect migraine headaches." Means v. Colvin, No. 15- 01107, 2016 U.S. Dist. LEXIS 79768, at *14 (W.D. Pa. June 20, 2016). While a history of sporadic treatment can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference. Moss v. Astrue, 555 F.3d 556, 562 (7th Cir. 2009); SSR 96-7p, 1996 SSR LEXIS 4.

> The Kulbacki court [Kulbacki v. Colvin, No. 2:15-297, 2016 U.S. Dist. LEXIS 60481 (W.D. Pa. May 6, 2016)] laid out a number of factors that a court should consider when a plaintiff complains of migraines to determine whether or not the complaints are credible. … These include: [1] Whether the claimant has been diagnosed with migraines; [2] whether the claimant has received treatment and medication; [3] the length of the history of complaints and treatment relating to migraines; [4] the alleged severity and frequency; [5] the symptoms the claimant alleges the migraines cause; and [6] whether the record contains any statements from doctors questioning the alleged frequency or severity.

Means, 2016 U.S. Dist. LEXIS 79768, at *16.

Here, the ALJ first determined that Plaintiff suffered from severe impairments, including headaches. The ALJ considered the entire record and concluded that it did not corroborate Plaintiff's allegations with respect the frequency or resulting limitations of her headaches. In so doing, the ALJ noted evidence that painted a fluctuating but chronic migraine situation, including Plaintiff's commencement of treatment with Dr. Shymanski, a neurologist, in 2002. Plaintiff testified that her treatment at first worked well, but that the migraines became more difficult to control in 2008. She also began treatment with Dr. Golani, her primary care physician, in 2011. At that time, she reported about two migraines per week, with instances of

no headaches noted during her visits with Dr. Golani. In January, 2012, she complained of worsening headaches, especially with weather change. In July, 2012, she again reported worsening migraines, and lessened efficacy of Imetrex.

Dr, Golani opined, in a 2015 "Headaches Impairment Questionnaire," that Plaintiff was subject to several limitations due to her headaches. He stated that she was incapable of even low stress work, and would be absent more than three times per month as a result of headaches. He further stated that when suffering from a headache – which he stated occurs 2-3 times per week, and lasts from 3-8 hours, causing nausea, visual disturbances, mood changes, and mental confusion/inability to concentrate -- Plaintiff is to take an Imetrex injection and stay in a quiet place. The ALJ gave Dr. Golani's opinion "little weight." He did so because several of Dr. Golani's records didn't mention the presence of headaches, and his recommendations were not "supported by the record as a whole." The ALJ stated no other reasons for assigning Dr. Golani's headache-related opinions little weight.

Furthermore, in terms of Plaintiff's credibility regarding her headaches, the ALJ found that the record did not corroborate Plaintiff's claim of years of debilitating migraines. He observed that Plaintiff's treatment with Dr. Golani was often "less frequent than advised," (for example, she was told to return in two months and followed up instead in five months; another time, she was told to return in three months, and returned in five months); and that Plaintiff went stretches without seeing a neurologist, relying instead on Dr. Golani's care for her headaches. Plaintiff, however, testified that she hadn't seen Dr. Shymansky for "a while because the migraines were fine," then when she saw him again, he said he couldn't help her with migraines. Dr. Golani then sent her to Dr. Stakic, and it took her time to get in to see the very busy Dr. Stakic. In the interim, Dr. Golani treated her for the migraines.

Under all of these circumstances, the ALJ's limited explanation for rejecting Plaintiff's subjective migraine complaints and her longtime treating physician's opinions relating to her headaches are insufficient to allow proper review. The mere fact that Plaintiff did not report headaches at every visit to Dr. Golani, particularly in light of uncontradicted evidence that her migraine situation fluctuated, does not serve to nullify her years of complaints and treatment. The same is true with the fact that she relied on her primary care physician for longitudinal care, particularly in light of her explanation regarding neurology care.[1] Further, broad reference to the "record as a whole" is insufficient here. This matter will be remanded for further consideration and explanation of the evidence regarding Plaintiff's migraines.

Although this matter is remanded on limited grounds, the Court notes concerns about the ALJ's conclusions regarding Plaintiff's fibromyalgia and credibility regarding fibromyalgia-related pain. Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 SSR LEXIS 1; Wiant v. Colvin, No. 15-90, 2016 U.S. Dist. LEXIS 78028, at *4 (W.D. Pa. June 14, 2016). In evaluating fibromyalgia, courts acknowledge that symptoms of the disease are subjective, and that medical testing may not be able to assess its severity. Singleton v. Astrue, 542 F. Supp. 2d 367, 377 (D. Del. 2008). As such, the opinions of the doctors treating a claimant with fibromyalgia are particularly significant. Lintz v. Astrue, No. 08-424, 2009 U.S. Dist. LEXIS 39987, at *7 (W.D. Pa. 2009) (internal citations omitted). Of course, a claimant who has been diagnosed with fibromyalgia will not automatically be classified

---

[1] Further, I note that the "inconsistencies" to which the ALJ points are not, in fact, contradictory. For example, brief note in a discharge summary that Plaintiff "Owns & runs her own business" is not facially inconsistent with Plaintiff's testimony that she owns ten percent of a business, and visits that business every two weeks or so for a half-hour to an hour to place orders and sign checks.

disabled under the Act. Id. "Even in fibromyalgia cases, the ALJ must compare the objective evidence and the subjective complaints and is permitted to reject plaintiff's subjective testimony so long as he provides a sufficient explanation for doing so." Nocks v. Astrue, 626 F. Supp. 2d 431, 446 (D. Del. 2009).

The ALJ discounted Dr. Golani's opinions regarding physical limitations so on grounds that the sit/stand and lifting limitations, need to elevate her legs every 15-20 minutes, and need for breaks were not supported by physical findings in the treatment records – in particular, the ALJ noted normal range of motion, no edema, normal coordination and reflexes, and "fair control" of fibromyalgia pain with medication. The ALJ also noted that Dr. Golani did not make any similar recommendations in his treatment records, but recommended exercise and smoking cessation. In particular, the ALJ noted that Plaintiff's reported and recommended exercise plans belied the need to elevate her legs as Dr. Golani indicated. Similarly, the ALJ found that Dr. Golani's limitations to occasional reaching, handling, and fingering was not supported by the record as a whole, which showed carpal tunnel syndrome but no weakness in the upper extremities and normal fine motor movements. Dr. Golani indicated that Plaintiff's fibromyalgia manifests in her low back and elbow. A focus on objective test results is potentially inconsistent with the nature of fibromyalgia. On the other hand, Plaintiff's contentions bear more on the weight of the evidence than on the supportability of the ALJ's decision. In any event, to the extent that his reconsideration of Plaintiff's migraines and Dr. Golani's opinion is intertwined with or affects the analysis of Plaintiff's fibromyalgia, the ALJ should explain and consider same.

Plaintiff's remaining contentions are rejected, as supported by substantial evidence, and will be addressed in brief. For example, Plaintiff challenges the ALJ's rejection of examining

psychologists Drs. Kennedy and Mancini. The ALJ adequately explained his reasons for treating the evidence as he did, and examined the entire record in so doing. Plaintiff also claims that the RFC failed to account for certain limitations. Limiting a claimant to routine and repetitive tasks has been held sufficient to account for moderate limitations in concentration, persistence, and pace. See, e.g., Pettway v. Colvin, No. 14-6334, 2016 U.S. Dist. LEXIS 141407, at *25 (E.D. Pa. Apr. 8, 2016).

## CONCLUSION

In conclusion, this matter will be remanded for additional explanation, or further consideration, of the evidence relating to Plaintiff's headaches. This analysis on remand may impact, and thus include further consideration of, the evidence relating to fibromyalgia. The remainder of the ALJ's decision shall stand. An appropriate Order follows.

Dated: August 30, 2018

BY THE COURT:

_____

Donetta W. Ambrose

Senior Judge, U.S. District Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KIMBERLY DAWN POLLY )
) No. 17-968
)
    v.

COMMISSIONER OF SOCIAL
SECURITY


**ORDER**

AND NOW, this 30th day of August, 2018, it is hereby ORDERED, ADJUDGED, and

DECREED that Plaintiff's Motion is GRANTED, and Defendant's DENIED. This matter is

remanded for further proceedings consistent with the foregoing Opinion.

BY THE COURT:

_____

Donetta W. Ambrose

Senior Judge, U.S. District Court